COOK, Justice
(dissenting).
I respectfully dissent from the affir-mance of the summary judgment on all of the claims asserted by the Lacys. I do not disagree with the proposition that the defendants had the right to remove danger trees outside the right-of-way, without compensation to the Lacys, that could have caused damage to the towers and lines owned by Alabama Power Company. I cannot agree, however, that the defendants had the right under the easement to cut trees and otherwise cause damage to the property of the plaintiffs, either for ingress to or egress from the easement without compensating the plaintiffs for such damage. I note that the evidence indicated some trees were cut that were not danger trees.
The Lacys presented the testimony and report of Ronald Hilyer, a forester. In his report, Hilyer stated: “In all my years as a practicing forester, I have never seen a project which evidences such a lack of responsibility and done in such a malicious way with no regard to the trespass on the other’s property.” (Plaintiffs’ Exhibit 79.) Hilyer testified that the Alabama Best Management Practices Manual for Forestry in the State of Alabama contained guidelines for “properly crossing streams, branches, revegetation of rutted and eroded areas, adjacent streams and branches.” C.R. 750. When asked to give examples of violations of the guidelines that he observed on the Lacys’ property, Hilyer answered:
‘Well, more specifically, at some of these branch crossings there was no observance made of how it should properly be done with preparation of how to cross these branches, along some of these steeper areas that go into these branch *1188 crossings measures taken to keep erosion in check or control.”
In that connection, Mr. Lacy told Alabama Power’s risk manager that Asplundh had left many ruts on the easement and that erosion had occurred as a result. Moreover, even conceding that Alabama Power had a right to cut the “danger trees,” I note that the Asplundh foreman admitted that “there were trees cut that were not danger trees.” C.R. 839.
The evidence indicates that, without consideration of the trees that were cut for ingress and egress, which, in my opinion were not covered by the judgment of condemnation, the Lacys expended over $10,000 to clean up the property after the entry by the defendants. There is, therefore, substantial evidence that would preclude a summary judgment disposing of all of the plaintiffs’ claims. Thus, I would hold that a jury question was presented as to whether Alabama Power, acting through Asplundh, was negligent- or wanton as to the manner in which it maintained its easement on the Lacys’ property. I do not consider NCNB Texas National Bank, N.A v. West, 631 So.2d 212 (Ala.1993), or Barber Pure Milk Co. v. Alabama State Milk Control Board, 275 Ala. 489, 156 So.2d 351 (1963), to be contrary authority.